## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| THOMAS WRINN, Individually and For Others Similarly Situated | Case No. _____ |
| v. | Jury Trial Demanded |
| CHAMPION SPECIALTY SERVICES, LLC d/b/a CHAMPION SPECIALTY SERVICES PROVIDER | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Thomas Wrinn ("Wrinn") brings this class and collective action to recover unpaid wages and other damages from Champion Specialty Services, LLC d/b/a Champion Specialty Services Provider ("Champion").

2.      Champion employed Wrinn as one of its Straight Time Employees (defined below) in Massachusetts.

3.      Champion paid Wrinn and its other Straight Time Employees by the hour.

4.      Wrinn and the other Straight Time Employees regularly worked more than 40 hours a week.

5.      But Champion did not pay Wrinn and its other Straight Time Employees overtime wages.

6.      Instead, Champion paid Wrinn and its other Straight Time Employees the same hourly rate for all hours worked, including those hours worked after 40 in a workweek (a practice known as "straight time for overtime").

7.      Indeed, Champion uniformly misclassified Wrinn and its other Straight Time Employees as exempt from overtime.

8.      But Champion never paid Wrinn and its other Straight Time Employees on a "salary basis" as required for any relevant overtime exemption Champion claimed with respect to these employees.

9.      And Champion applied its illegal straight time for overtime pay scheme to Wrinn and its other Straight Time Employees regardless of any individualized differences.

10.     Champion's uniform straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA) and the Massachusetts Wage and Hour Law (MWHL) by depriving Wrinn and the other Straight Time Employees of the "time and a half" overtime premium they are owed for hours worked over 40 in a workweek.

## JURISDICTION & VENUE

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     This Court has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13.     This Court has specific personal jurisdiction over Champion because Champion conducts substantial business in Massachusetts, including maintaining an office in Pittsfield, Massachusetts and employing workers (like Wrinn) in the Commonwealth.

14.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District. 28 U.S.C. § 1391(b)(2).

15.     Specifically, Champion employed Wrinn in Plymouth, Massachusetts, which is in this District and Division.

## PARTIES

16.     Wrinn worked for Champion as a Dry Active Waste Supervisor at Pilgrim Nuclear Power Station in Plymouth, Massachusetts from approximately February 2022 until April 2023.

2

17.     Throughout his employment, Champion paid Wrinn straight time for overtime.

18.     Wrinn's written consent is attached as **Exhibit 1**.

19.     Wrinn brings this class and collective action on behalf of himself and all other similarly situated Champion employees who Champion paid under its illegal straight time for overtime pay scheme.

20.     Champion paid each of these employees the same hourly rate for all hours worked, including those hours worked over 40 in a workweek in willful violation of the FLSA and MWHL.

21.     The FLSA Collective of similarly situated employees is defined as:

> **All Champion employees who were paid straight time for overtime at any time during the past 3 years ("FLSA Collective Members").**

22.     Wrinn also seeks to represent such a class under the MWHL pursuant to FED. R. CIV. P. 23.

23.     The Massachusetts Class of similarly situated employees is denied as:

> **All Champion employees who were paid straight time for overtime while working in Massachusetts at any time during the past 3 years ("Massachusetts Class Members").**

24.     The FLSA Collective Members and Massachusetts Class Members are collectively referred to as the "Straight Time Employees."

25.     Champion is a Florida corporation headquartered in Ft. Lauderdale, Florida.

26.     Champion is registered to do business in the Commonwealth.

27.     Champion maintains an office in Pittsfield, Massachusetts.

28.     Champion can be served through its registered agent: **Northwest Registered Agent Service Inc., 82 Wendell Avenue, Suite 100, Pittsfield, Massachusetts 01201**.

**FLSA COVERAGE**

29.     At all relevant times, Champion was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30.     At all relevant times, Champion was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

31.     At all relevant times, Champion was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce.

32.     At all relevant times, Champion has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

33.     At all relevant times, Wrinn and the other Straight Time Employees were Champion's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

34.     At all relevant times, Wrinn and the other Straight Time Employees were engaged in commerce or in the production of goods for commerce.

35.     Champion uniformly paid its Straight Time Employees the same hourly rate for all hours worked, including those worked after 40 in a workweek.

36.     Champion applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

37.    As a result of Champion's uniform straight time for overtime pay scheme, the Straight Time Employees (which, as noted above, include Wrinn) did not receive overtime at the premium rates required by the FLSA.

38.    By paying straight time for overtime, Champion did not pay its Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

39.    Champion's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

40.    Champion is a staffing company that providers workers to the infrastructure, industrial, nuclear, commercial, and environmental industries across the country, including in Massachusetts.[1]

41.    To meet its business objectives, Champion hires workers, like the Straight Time Employees, who it "staffs" to its clients across the country, including in Massachusetts.

42.    Champion uniformly pays Wrinn and its other Straight Time Employees on an hourly basis.

43.    Wrinn and the other Straight Time Employees regularly work more than 40 hours a week.

44.    But Champion does not pay them premium overtime wages.

45.    Instead, Champion pays Wrinn and its other Straight Time Employees the same hourly rate for all hours worked, including those hours worked after 40 in a workweek.

46.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal straight time for overtime pay scheme for similar work.

---

[1] *See* https://www.championssc.com/ (last visited November 7, 2023).

47.     For example, Wrinn worked for Champion as a Dry Active Waste Supervisor at Pilgrim Nuclear Power Station in Plymouth, Massachusetts from approximately February 2022 until April 2023.

48.     As a Dry Active Waste Supervisor, Wrinn's primary responsibilities included assisting with the decommissioning of nuclear power plants and shipping the nuclear waste out of the plant in accordance with Champion's (and its clients') policies, procedures, and protocols, as well as well-established industry standards and regulations.

49.     Wrinn was Champion's hourly employee.

50.     Specifically, Champion paid Wrinn approximately $72 an hour.

51.     Wrinn reported his hours worked to Champion.

52.     Champion's records reflect the hours Wrinn worked each week.

53.     Wrinn regularly worked more than 40 hours a week while employed by Champion.

54.     In fact, Wrinn typically worked 10 to 16 hours a day for at least 4 days a week (or 40 to 64+ hours a week).

55.     Despite knowing Wrinn regularly worked overtime, Champion did not pay him overtime wages for the hours he worked over 40 in a workweek.

56.     Instead, Champion paid him under its uniform, illegal straight time for overtime pay scheme.

57.     For example, if Wrinn worked 45 hours during a workweek (and he often worked more), Champion did not pay him "time and a half" for the 5 hours he worked over 40 in that workweek.

58.     Instead, Champion paid Wrinn at the same hourly rate ($72) for all 45 hours he worked that workweek—including his 5 hours of overtime.

59.     So, rather than receiving $108 an hour for each hour of overtime he worked, Wrinn received the same hourly rate ($72) for all hours worked—including his overtime hours.

60.     Because of Champion's uniformly applied straight time for overtime pay scheme, Wrinn did not receive the required "time and a half" overtime premium for the hours he worked over 40 in a workweek.

61.     Champion pays its other Straight Time Employees according to the same pay scheme it imposed on Wrinn.

62.     Like Wrinn, Champion pays its other Straight Time Employees on an hourly basis.

63.     Like Wrinn, Champion requires its other Straight Time Employees to report their hours worked to Champion.

64.     Thus, just as Champion maintains records of the hours Wrinn worked, it also maintains records of the hours worked by the similarly situated Straight Time Employees.

65.     Champion's records show the Straight Time Employees regularly work more than 40 hours a workweek.

66.     Every Straight Time Employee worked more than 40 hours in at least one workweek during the last 3 years.

67.     Indeed, like Wrinn, the Straight Time Employees typically work at least 10 to 16 hours a day for at least 4 days a week (or 40 to 64+ hours a week).

68.     Despite knowing its Straight Time Employees regularly worked overtime, Champion did not pay them premium overtime wages.

69.     Instead, Champion paid its Straight Time Employees the same hourly rate for all hours worked, including those worked after 40 in a workweek, in willful violation of the FLSA and MWHL.

70.     Champion never paid Wrinn and its other Straight Time Employees on a "salary basis."

71.    Champion does not pay Wrinn and its other Straight Time Employees a guaranteed salary that is not subject to reduction based on the quality or quantity of work.

72.    If Wrinn and the Straight Time Employees worked fewer than 40 hours, Champion only paid them for the hours they actually worked.

73.    Because Champion fails to pay Wrinn and its other Straight Time Employees on a "salary basis," these workers are non-exempt employees entitled to premium overtime wages.

74.    But Champion does not pay Wrinn and its other Straight Time Employees premium overtime wages when they work more than 40 hours in a workweek.

75.    Instead, Champion pays Wrinn and its other Straight Time Employees under its uniform, illegal straight time for overtime pay scheme in willful violation of the FLSA and MWHL.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

76.    Wrinn incorporates all other paragraphs by reference.

77.    Wrinn brings his claims as a class and collective action on behalf of himself and the other Straight Time Employees.

78.    The Straight Time Employees are uniformly victimized by Champion's uniform straight time for overtime pay scheme, which is in willful violation of the FLSA and MWHL.

79.    Other Straight Time Employees worked with Wrinn and indicated they were paid in the same manner, performed similar work, and were subject to Champion's same illegal straight time for overtime pay scheme.

80.    Based on his experience with Champion, Wrinn is aware Champion's illegal straight time for overtime pay scheme was imposed on the other Straight Time Employees.

81.    The Straight Time Employees are similarly situated in the most relevant respects.

82.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay.

83.    Any relevant exemption defenses would require Champion to pay the Straight Time Employees on a "salary basis."

84.    Because Champion fails the "salary basis" test with respect to the Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

85.    The only *relevant* inquiry is whether the Straight Time Employees worked more than 40 hours in a week (which, by definition, they did).

86.    Therefore, the specific job titles or precise job locations of the various Straight Time Employees do not prevent class or collective treatment.

87.    Rather, Champion's uniform straight time for overtime pay scheme renders Wrinn and the other Straight Time Employees similarly situated for the purposes of determining their right to overtime pay.

88.    Champion's records reflect the number of hours worked each week by Wrinn and the other Straight Time Employees.

89.    Champion's records also show it paid Wrinn and the other Straight Time Employees "straight time," instead of "time and a half," for their overtime hours.

90.    The back wages owed to Wrinn and the other Straight Time Employees can therefore be calculated using the same formula applied to the same records.

91.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Champion's records, and there is no detraction from the common nucleus of liability facts.

92.    Therefore, the issue of damages does not preclude class or collective treatment.

93.    Wrinn's experiences are therefore typical of the experiences of the other Straight Time Employees.

94.    Wrinn has no interest contrary to, or in conflict with, the Straight Time Employees that would prevent class or collective treatment.

95.    Like each Straight Time Employee, Wrinn has an interest in obtaining the unpaid wages owed under federal and/or Massachusetts law.

96.    Wrinn and his counsel will fairly and adequately protect the interests of the Straight Time Employees.

97.    Indeed, Wrinn retained counsel highly experienced in complex class and collective action litigation, such as this.

98.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

99.    Absent this class and collective action, many Straight Time Employees will not obtain redress for their injuries, and Champion will reap the unjust benefits of violating the FLSA and MWHL.

100.    Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

101.    Indeed, if individual actions were required to be brought by each Straight Time Employee, the result would be a multiplicity of actions, creating a hardship to the Straight Time Employees, to the Court, and to Champion.

102.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

103.    The questions of law and fact that are common to each Straight Time Employee predominate over any questions affecting solely the individual members.

104.    Among the common questions of law and fact are:

a.      Whether Champion applied its straight time for overtime pay scheme uniformly to the Straight Time Employees;

b.      Whether Champion misclassified the Straight Time Employees as exempt from the FLSA's and MWHL's respective overtime provisions;

c.      Whether the Straight Time Employees are non-exempt employees entitled to premium overtime wages;

d.      Whether Champion's straight time for overtime pay scheme satisfies the "salary basis" test;

e.      Whether Champion's straight time for overtime pay scheme deprived the Straight Time Employees of premium overtime wages they are owed under the FLSA and MWHL;

f.      Whether Champion's decision to misclassify the Straight Time Employees as exempt from overtime was made in good faith;

g.      Whether Champion's decision not to pay the Straight Time Employees overtime was made in good faith; and

h.      Whether Champion's violations of the FLSA and MWHL were willful.

105.    Wrinn knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

106.    As part of its regular business practices, Champion intentionally, willfully, and repeatedly violated the FLSA and MWHL with respect to the Straight Time Employees.

107.    Champion's illegal straight time for overtime pay scheme deprived Wrinn and the other Straight Time Employees of the premium overtime wages they are owed under Massachusetts and federal law.

108.    There are many similarly situated Straight Time Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

109.    This notice should be sent to the Straight Time Employees pursuant to 29 U.S.C. § 216(b).

110.    The Straight Time Employees are known to Champion, are readily identifiable, and can be located through Champion's business and personnel records.

### CHAMPION'S WAGE VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA AND MWHL

111.    Wrinn incorporates all other paragraphs by reference.

112.    Champion knew it was subject to the FLSA's and MWHL's respective overtime provisions.

113.    Champion knew the FLSA and MWHL required it to pay non-exempt employees, including the Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

114.    Champion knew each Straight Time Employee worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required these workers to report their hours worked to Champion.

115.    Champion knew that the Straight Time Employees were its hourly employees.

116.    Champion knew it paid the Straight Time Employees on an hourly basis.

117.    Champion knew it paid the Straight Time Employees straight time for overtime.

118.    Champion knew it did not pay the Straight Time Employees on a "salary basis."

119.    Champion knew it did not pay the Straight Time Employees any guaranteed salary that was not subject to reduction based on the quantity or quality of work.

120.    Champion knew that any purported weekly base "salary" it claims to have paid the Straight Time Employees was not "reasonably related" to their actual weekly earnings.

121.    Champion knew its straight time for overtime pay scheme did not satisfy the "salary basis" test.

122.    Champion knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to the Straight Time Employees.

123.    Nonetheless, Champion uniformly misclassified the Straight Time Employees as exempt employees and refused to pay them overtime wages.

124.    Champion's decision to misclassify its Straight Time Employees as exempt employees was neither reasonable, nor was the decision to misclassify these employees as exempt made in good faith.

125.    Champion's failure to pay its Straight Time Employees premium overtime wages was neither reasonable, nor was the decision not to pay these employees premium overtime wages made in good faith.

126.    Champion knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA and MWHL.

127.    Champion knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime pay scheme that deprived the Straight Time Employees of overtime wages at the proper premium rate in violation of the FLSA and MWHL.

## <u>COUNT I</u>
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

128.    Wrinn incorporates all other paragraphs by reference.

129.    Wrinn brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

130.    Champion violated, and is violating, the FLSA by employing non-exempt employees (Wrinn and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

131.    Champion's unlawful conduct harmed Wrinn and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

132.    Accordingly, Wrinn and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

**C<small>OUNT</small> II**

**F<small>AILURE TO</small> P<small>AY</small> O<small>VERTIME</small> W<small>AGES UNDER THE</small> MWHL**
**(M<small>ASSACHUSETTS</small> C<small>LASS</small>)**

133.    Wrinn incorporates all other paragraphs by reference.

134.    Wrinn brings his MWHL claims as a class action on behalf of himself and the other Massachusetts Class Members pursuant to F<small>ED</small>. R. C<small>IV</small>. P 23.

135.    At all relevant times, Champion was a covered "employer" within the meaning of the MWHL. *See* M.G.L. 151 § 2.

136.    At all relevant times, Champion employed Wrinn and the other Massachusetts Class Members as covered "employees" within the meaning of the MWHL. *See* M.G.L. 151 § 2.

137.    The MWHL requires employers, like Champion, to pay non-exempt employees, including Wrinn and the other Massachusetts Class Members, overtime wages at rates not less than 1.5 the employee's regular rate of pay for all hours worked after 40 in a workweek. *See* M.G.L. 151 § 1A.

138.    Wrinn and the other Massachusetts Class Members are entitled to overtime pay under the MWHL.

139.    Champion violated, and is violating, the MWHL by employing non-exempt employees (Wrinn and the other Massachusetts Class Members) for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek. *See* M.G.L. 151 § 1A.

140.    Champion's unlawful conduct harmed Wrinn and the other Massachusetts Class Members by depriving them of the overtime wages they are owed.

141.    Accordingly, Wrinn and the Massachusetts Class Members are entitled to recover their unpaid overtime wages under the MWHL in an amount equal to 1.5 times their regular rates of pay, plus treble damages, as well as attorney's fees and costs. *See* M.G.L. 151 § 1B.

### JURY DEMAND

142.    Wrinn demands a trial by jury on all Counts.

### RELIEF SOUGHT

Wrinn, individually and on behalf of the other Straight Time Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Wrinn and his counsel to represent the interests of the Straight Time Employees;

d.    An Order pursuant to Section 16(b) of the FLSA finding Champion liable for unpaid overtime wages due to Wrinn and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order pursuant to the MWHL finding Champion liable for unpaid overtime wages due to Wrinn and the Massachusetts Class Members, plus treble damages in an amount equal to two times their unpaid wages;

f.    A Judgment against Champion awarding Wrinn and the Straight Time Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA and MWHL;

g.    An Order awarding attorney's fees, costs, and expenses;

h.    Pre- and post-judgment interest at the highest applicable rates; and

i.    Such other and further relief as may be necessary and appropriate.

Dated: November 20, 2023.

Respectfully submitted,

**GORDON LAW GROUP LLP**

By: */s/ Philip J. Gordon*
Philip J. Gordon
Mass. BBO# 630989
Kristen M. Hurley
Mass. BBO# 658237
585 Boylston Street
Boston, Massachusetts 02116
Phone:        (617) 536-1800
Fax:          (617) 536-1802
pgordon@gordonllp.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone:        (713) 352-1100
Fax:          (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone:        (713) 877-8788
Fax:          (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR WRINN AND
THE STRAIGHT TIME EMPLOYEES**